J. F. HOLMAN and wife v. CHARLES PRICE and others.

*Construction of Will.*

Where a testator bequeathed one share of proceeds of property to a married daughter absolutely, and one share to his daughters, A, B and C, minors, and one share each to two other married daughters during their natural life; *Held*, that the infant legatees are each entitled to an equal share with the others.

*Lassiter* v. *Wood*, 63 N. C., 360; *Macon* v. *Macon*, 75 N. C., 376, cited and approved.)

CONTROVERSY for the construction of a will submitted upon a case agreed and heard at Fall Term, 1880, of DAVIE Superior Court, before *McKoy, J.*

The defendant appealed from the ruling and judgment of the court below.

*Mr. J. M. Clements,* for plaintiffs.
*Messrs. J. A. Williamson* and *W. H. Bailey,* for defendants.

SMITH, C. J. Moses Wagner on July 8th, 1866, made his will in which, after a devise of the land whereon he resided to his wife for life and a bequest of certain personal estate, are contained these clauses:

Item 4. "I will and bequeath that my daughters, Amanda, Anna and Clara, shall receive a good English education at the cost and charge of my estate before the division takes place, which is provided for hereinafter."

Item 5. "I will all my real estate, not devised to my wife, to be sold by my administrator as soon as is practicable after my decease, and also all the land willed my wife in like manner to be sold after her death by my administrator, and the proceeds of sale shall be equally divided as follows, to-wit: one share to Melinda, wife of McDonald VanEaton, one share to Amanda Wagner, Anna Wagner and Clara Wagner, and one share to the sole and separate use of Margaret, the wife of John H. Allen, free of any control of her said husband, the said Margaret to have and enjoy the interest accruing from the same during her natural life, and after her death to be divided among her children, or their issue if any be dead. And in like manner I will and devise one share thereof to the sole and separate use of my daughter Mary Ann, wife of Marion VanEaton, free of any control of her said husband, to receive and enjoy the interest accruing from the same during her natural life, and after death, the same be divided among her children or their issue, if any be dead."

Item 6. "After the payment of my debts, and the legacies, costs and charges of executing my will, I will that the proceeds of all notes or other evidences of debt due me, also all moneys on hand and the proceeds of sale of all personal property sold, and not herein specifically bequeathed, and all the residue of my estate, real, personal and mixed, I will and bequeath that the said fund shall be divided in the same manner among my children, as the moneys arising from the real estate, and devised in the 5th item of this will, and subject to the same conditions in all things and especially that the shares willed to my daughters, Margaret and Mary Ann, shall entitle them to receive the interest on the same during their respective lives, to their sole and separate use, free of the control of their said husbands ; and after the death of each of them the shares to descend to their chil-

dren in the same manner as is set forth as to the real estate in the 5th item."

In the 7th item the testator directs the sale of certain mill property and a similar disposition of the proceeds of his other estate. At the date of execution of the will the six daughters mentioned in it were living, and those who were married had removed, and were residing beyond the limits of the state. Two of them, Margaret and Mary Ann, died during the life time of their father, leaving issue, and he died in July, 1875. The three younger daughters, Amanda, Anna and Clara, were minors and living with their parents when the will was made.

The controversy is as to the proper construction of the clauses which distribute the funds produced by the sales among the legatees, and especially whether the unmarried daughters take an equal share each with their older sister and the successors to the shares of those deceased, or together take a single and equal share to be divided among them. His Honor was of opinion that Amanda, Anna and Clara were entitled to one-sixth each of the distributable estate and an equal share with the others, and in this interpretation we concur.

Wills are so diversified in form and expression, written often in haste and by persons not skilled in the accurate use of language to convey the meaning of another, that the court can seldom derive much aid from the examination of adjudicated cases, and hence the necessity of general rules as guides in the difficult task of arriving at and giving proper legal effect to the instrument. A leading principle in the interpretation of wills is to ascertain and recognize the general pervading purpose of the testator and to subordinate thereto any inconsistent special provisions found in it. This principle was pressed into service and carried to its extreme limits in the recent cases of *Lassiter* v. *Wood,* 63 N. C., 360, and *Macon* v. *Macon,* 75 N. C., 376. In the former,

READE, J., employs this language, which in the other is cited and approved : "It is apparent that the leading purpose of the testator was to make all his children equal. The purpose of the testator, as gathered from his will, is always to be carried out by the court, and minor considerations, when they come in the way, must yield. Especially is this so when the purpose is *in consonance with justice and natural affection.*"

A fair and equal distribution of his estate among his children, with restrictions upon the shares of two of his married daughters, is the manifest predominant intent discovered in the will of the testator. To effect this object the three younger remaining under his roof, are to have "a good English education at the cost of the estate," as, we must infer, had already been furnished to the three older who had left.

The funds, when discharged of this imposed obligation, are then to be "*equally divided,*" as follows, to-wit: One share to Melinda wife of McDonald VanEaton, one share to Amanda Wagner, Anna Wagner and Clara Wagner, and one share to the sole and separate use" of the other daughters respectively with contingent limitations over. The proper construction of the terms of the bequest to the minor children, inserted between the absolute gift to one and the restricted gift to the two other married daughters, is, that they are to take distributively as the others take and in the same sense as if the word "each" had been added after their names.

These daughters are grouped together, not to make a joint bequest to all, but because there was nothing peculiar in their social or personal relations to separate them as objects of the bounty to be provided by the common parent. This is not a strained interpretation of the words in their connections and is most obviously necessary to carry out the general intent of the testator. Why, it may be asked,

should the father give those unprotected daughters equal opportunities for mutual improvement with their older sisters, and then to cut down each in the general division of the estate to one-third only of the shares which the others are to receive? This is not in harmony with that sense of moral duty and parental affection for all his children alike, so strongly impressed upon the instrument itself and indicating an intent to make his bounty equal to each.

We therefore hold that the legatees, Amanda, Anna and Clara, are entitled to an equal share each with the others, and that the one share prefixed to their names was intended to be and is, a bequest of one share to each of them.

There is no error and we affirm the ruling of the court below.

No error.                              Affirmed.